A TRUE COPY
TESTE [signature]
CIRCUIT COURT KANAWHA COUNTY, WVA
June 9 2021

```
CASE  21-C-353          KANAWHA                    PAGE     1

DONNIE ENNIS           vs.  CHEMOURS COMPANY

LINE  DATE      ACTION
1 04/28/21 # CASE INFO SHEET; COMPLAINT; ISSUED SUM & 2 CPYS; F FEE; RCPT
2            586487 & 586574; $245.00
3 05/14/21 # RE-ISSUED SUM & 1 CPY AS TO CHEMOURS CO.
4 06/01/21 # LET FR SS DTE 5/27/21; AS W/RET (5/27/21 SS) AS TO CHEMOURS
5            CO.
6 06/01/21 # LET FR SS DTE 5/27/21; SUM W/RET (5/27/21 SS) AS TO CHEMOURS
7            CO. FC
8 06/08/21 # (2) E-CERTS FR SS
```

EXHIBIT

A



IN THE CIRCUIT COURT OF ___KANAWHA___ COUNTY, WEST VIRGINIA

## CIVIL CASE INFORMATION STATEMENT
(Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

**Plaintiff(s)**
DONNIE ENNIS

Case No. 21-C-353
Judge: Bloom

Plaintiff's Phone: (304) 326-0188

**vs.**

**Defendant(s)**
THE CHEMOURS COMPANY FC, LLC

CT CORPORATION SYSTEM

1627 QUARRIER ST.
Street Address
CHARLESTON, WV 25311-2124
City, State, Zip Code

Days to
Answer
20

Type of Service
WEST VIRGINIA SECRETARY OF STATE

Defendant's Phone:

**II. TYPE OF CASE:**

- [X] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other:
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other:

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [X] Yes [ ] No   CASE WILL BE READY FOR TRIAL BY (Month/Year):

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [X] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language:
- [ ] Other:

Attorney Name: **Laura Davidson**
Firm: **Mountain State Justice, Inc.**
Address: **1029 University Ave, Ste. 101, Morgantown, WV 26505**
Telephone: **(304) 326-0188**

[ ] **Proceeding Without an Attorney**

Representing:
[X] Plaintiff [ ] Defendant
[ ] Cross-Defendant [ ] Cross-Complainant
[ ] 3rd-Party Plaintiff [ ] 3rd-Party Defendant

Original and **4** copies of complaint enclosed/attached.

Dated: 04 / 23 / 2021   Signature: /s/ Laura Davidson

SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)

30H

IN THE CIRCUIT COURT OF KANAWHA COUNTY OF WEST VIRGINIA

CATHY S. G... .. . ...
KANAWHA COUNTY C....CUIT COURT

**DONNIE ENNIS**

                                                        Civil Action No.: 21-C-353

         **Plaintiff,**                               B100m

v.

**THE CHEMOURS COMPANY;**
**THE CHEMOURS COMPANY FC, LLC;**
**AND THE CHEMOURS COMPANY TT, LLC**

         **Defendants.**

<u>**COMPLAINT**</u>

This Complaint arises from Defendants' unlawful, retaliatory discharge of Plaintiff. Plaintiff regularly and repeatedly reported Defendants' violations of West Virginia Water Pollution Control Act ("WVWPCA"), applicable United States Department of Transportation, Federal Motor Carrier Safety Administration, ("DOT"), and United States Department of Labor Occupational Safety and Health Administration ("OSHA") safety regulations under CPSIA. After Plaintiff reported these violations of substantial public policy, Defendants terminated Plaintiff in retaliation for his good faith behavior. Plaintiff now seek redress for Defendants' unlawful misconduct.

**PARTIES**

1.    Plaintiff Donnie Ennis is a 46-year-old resident of Putnam County who, as described below, was employed by Defendants.

2.    Defendants the Chemours Company, the Chemours Company FC, LLC; and the Chemours Company TT, LLC, ("Chemours") is a chemical manufacturing plant with a principal

1

place of business located at 1007 Market Street, Wilmington, DE 19899; and an operating plant located at 901 W. Dupont Avenue, Belle, WV 25015.

## STATEMENT OF FACTS

3.      Donnie Ennis began working at the Chemours plant, located in Belle, West Virginia in April 2007.

4.      Defendant is a spin-off company of Dupont, and took over the Belle chemical plant in 2015.

5.      Plaintiff began working with Paul Griffith in or around the summer of 2016. They worked on the A shift, working alternating thirty-six and forty-eight hour weeks as a two-person team.

6.      During their shifts, Plaintiff performed a number of job duties around the plant, including loading and unloading shipping containers, visually inspecting areas of the plant, writing work permits, completing gas checks, transporting samples to the lab, and checking units while in operation, among other tasks.

7.      From April 2007 to September 26, 2019, Donnie Ennis earned approximately thirty-seven dollars per hour.

### Plaintiff Begins Reporting Health and Safety Violations to Defendant

8.      Plaintiff first became concerned about workplace safety violations in 2016. As a result, Plaintiff began regularly and repeatedly reporting these safety violations to Defendants.

### *Loading and Unloading Hazardous Materials*

9.      For instance, Defendants had cargo tank loading spots which were not in compliance with DOT Hazardous Materials Regulations.

2

Case 2:21-cv-00368   Document 1-1   Filed 06/25/21   Page 5 of 25 PageID #: 10

10.     For instance, Defendants failed to maintain its load shack and scales. The load shack is one of Defendants' designated spaces where a qualified person attends and monitors the loading and unloading of hazardous materials into cargo tanks.

11.     Under 49 C.F.R. §177.834, the attendance requirement of DOT's Hazardous Materials Regulations, a qualified person attending the loading and unloading process must be within twenty-five feet of and have an unobstructed view of the cargo tank during the loading and unloading process.

12.     Defendants' load shack is dilapidated with rusted walls, has no video monitoring system or windows, and has no line of sight of the cargo tanks during the loading and unloading process.

13.     Because of this, the attendant did not have an unobstructed line of sight to the cargo tanks as they were loaded and unloaded in violation of 49 C.F.R. § 177.834(i)(3). This violation posed an unreasonable risk to the Plaintiff's and the general public's health, safety, and property when hazardous materials are transported in commerce.

14.     Plaintiff regularly reported this violation to agents of Defendants on multiple occasions between 2016-2019. However, Defendants failed to repair the load shack in violation of DOT regulations throughout Plaintiff's employment.

15.     Additionally, Defendants regularly failed to maintain its video monitoring system, which was intended to meet the attendance requirement of DOT's Hazardous Materials Regulations, in lieu of a qualified attendant who is able to monitor the process within twenty-five feet of the process. 49 C.F.R. § 177.834(i).

3

16.     Under this provision, a mounted video monitoring system, with an unobstructed view, may be attended by a qualified person to monitor the loading and unloading of hazardous materials in cargo tanks. 49 C.F.R. § 177.834(i)(3).

17.     This failure to maintain its video monitoring system violated DOT regulations intended to protect the public from unreasonable risks to health, safety, and property when hazardous materials are transported in commerce. 49 C.F.R. §§ 171.8 & 177.834.

18.     Plaintiff discovered that the video monitoring system was not working in or around April 2018 and again during the first quarter of 2019. Plaintiff repeatedly reported this safety violation to agents of Defendants, including but not limited to, Adam Akers, Ira Jeffries, Tom Montgomery, among others.

19.     Although Plaintiff made repeated reports of this safety violation to Defendants, the video monitoring system was still malfunctioning when Plaintiff was unlawfully terminated on September 26, 2019.

20.     Employees are protected from retaliation, under the Consumer Product Safety Improvement Act ("CPSIA"), for reporting to their employer, the federal government, or a state attorney general, reasonably perceived violations of any statute of any statute or regulation within the Consumer Product Safety Commission. 15 U.S.C. § 2087.

21.     Upon information and belief, Defendants are a manufacturer covered by CPSIA.

### *Fire and Gas Detection System*

22.     Additionally, Defendants failed to maintain its fire and gas detection system. In early 2019, the fire and gas detection system had been malfunctioning for approximately six months, including sounding an alarm when there was no fire or gas leak, and reporting that there was an error in the system affecting its operation.

4

23.     Plaintiff reported this ongoing safety risk to Defendants on numerous occasions, yet the system was not repaired at the time Plaintiff was unlawfully terminated.

### *Illegal Discharge of Pollutants into the Kanawha River*

24.     In or around 2017, Plaintiff became aware of water seeping out of the ground. The seepage was next to a weak acid tank roughly one hundred yards from the Kanawha River.

25.     Agents of Defendants began to dig to investigate the source of this water.

26.     As a result of this digging, it became clear that there was a pipe in the ground that was leaking water and pollution.

27.     The pipe was left alone by Defendants until approximately June 2019, when Defendants further excavated the pipe.

28.     Following this additional excavation, Plaintiff learned that the pipe ended in an unpermitted outfall into the Kanawha River.

29.     Pursuant to the federal Clean Water Act (CWA) and the West Virginia Water Pollution Control Act (WVWPCA), discharges of pollution into jurisdictional waters without a permit are prohibited. *See* 33 U.S.C. § 1311(a); W. Va. Code § 22-11-8(b).

30.     The Kanawha River is a jurisdictional water under both statutes.

31.     Chemicals and other material entering the pipe would be considered pollutants, for which the Defendant would be responsible, under both the CWA and WVWPCA.

32.     Plaintiff believed, based on his knowledge of the plant, that the pipe was transporting cooling water from an acid cooler. Water from the acid cooler was overflowing and the cooling water collected in the sump pump pit. Further, he believed that the pump was not working. Because of this, the sump pit overflowed into the hole where the pipe was and then the

5

pipe leaked into the outflow into the river. However, Plaintiff did not know what substances were mixed with the water leaking into the Kanawha River.

33.    Upon information and belief, Defendants did not acquire the necessary United States Environmental Protection Agency or West Virginia Department of Environmental Protection permits for the outfall.

34.    Plaintiff was deeply concerned about this unpermitted, unlawful outfall and the potential hazards it could pose to environmental safety.

35.    Plaintiff regularly and repeatedly reported this ongoing safety risk to agents of Defendants.

36.    Instead of rectifying the situation, the Plant Manager, Andy Harris, instructed employees to stop excavating. Upon information and belief, further excavation would lead to identifying additional information about illegal outflows that could subject Defendants to fines or additional costs.

37.    Throughout 2019, Plaintiff continued to report this ongoing hazard. Plaintiff made reports to the process supervisor, area managers, maintenance workers, and the plant manager, among others.

38.    Plaintiff was told by the Unit Manager, Jim Hollingsworth, that the problem was resolved, and that he no longer needed to raise concerns regarding the outfall.

39.    However, Plaintiff observed the hole in the pipe that was still visible after excavation, and believed that no steps had been taken to remedy the unsafe outfall. Therefore, he continued to advocate for the situation to be remediated appropriately.

40.    Despite Plaintiff's repeated voicing of his concerns, upon information and belief, Defendants did not remediate the illegal outfall.

***Broken Dikes and Chemical Leaks***

41.     On or about June 2018, Defendants took a pump out of service because the lines were rotted and needed replacing. Defendants took over a year to replace these lines.

42.     Due to this line failure, dimethyl sulfate ("DMS"), and rainwater accumulated into a dike for tanks 70 and 72, filling it with about four feet of liquid. DMS is an extremely toxic liquid or vapor if swallowed and causes skin, eye, and respiratory irritation, among other health hazards.

43.     Defendants knowingly added DMS to this dike for over a year. Plaintiff, and other operators, took daily samples of DMS and then flushed the lines out to ensure fresh samples. The sample point then drained into that dike.

44.     Defendants never declared this dike an emergency, and did not terminate anyone as a result of the unlawful discharge of DMS into the dike.

45.     On another occasion in 2018, another employee, Craig Tyler, left a valve open that caused 45,000 pounds of Dimethylacetamide ("DMAC"), to be pumped into the ground. Mr. Tyler was not terminated as a result of the leak.

46.     In July of 2019, Plaintiff discovered that a sulfur trioxide ("SO3") tank's pressure was slowly rising and then decreasing. The normal operating pressure is zero.

47.     SO3 is generally a colorless liquid that can react with water to form sulfuric acid. Both chemicals are corrosive and can cause chemical burns when they come into contact with skin, and can cause respiratory irritation when inhaled, among other health hazards.

48.     The SO3 tank was located inside the plant, thirty feet away from control room and roughly one hundred yards from the Kanawha River.

49.     This tank posed a risk to public safety because if the pressure continued to build, the tank could release an estimated 100,000-300,000 pounds of SO3 fumes into the atmosphere.

7

50.     Upon discovery, Plaintiff reported the risk to Defendants. However, Defendants again failed to take action and did not repair the tank.

51.     Ultimately the pressure in the SO3 tank continued to rise to unsustainable levels. As a result, the tank began malfunctioning, and other employees pulled the fume alarm because of the risk posed to another nearby tank that contained weak acid. The fume alarm was pulled December 13, 2019—several months after Plaintiff was terminated. If the pressure in either of these tanks had continued to rise   hazardous fumes could have been released into the atmosphere.

52.     Additionally, on or about July 2019, a pump in another dike, for tanks 74 and 76, stopped working. The dike was located roughly twenty feet from the control room. This dike contained DMS.

53.     During that same time period the plant shutdown for about ten days to perform maintenance work.

54.     After the Plaintiff returned to work he observed two to three inches of standing water in the dike. This dike was usually empty and existed to catch liquid that may drip out from chemical storage units.

55.     Plaintiff was aware that it had been raining heavily during the shutdown and that the pump in the dike was still broken. Because of these facts, Plaintiff assumed that the liquid in the dike was rainwater.

56.     A few days later, Plaintiff noticed that the liquid, which he believed was rainwater, was a few inches higher. Because the dike contained a tub of caustic, used to decontaminate items, Plaintiff reported to Defendants that he believed that the liquid in the dike was rainwater, but that it might have mixed with the caustic.

57.     About a week later at the end of his shift, Plaintiff noticed that the level of liquid in the dike had risen to about twelve to sixteen inches.

58.     Plaintiff still believed that the liquid was rainwater, but also felt that the situation should be investigated further. Before leaving at the end of his shift, Plaintiff shut the loading pump off, and Plaintiff informed Clint Ryan and Rodney Knight, who were working the next shift, to see what needed to happen to get the dike pumped out because the pump itself was broken.

59.     Rather than investigating the situation at that moment, Mr. Knight and Mr. Ryan allowed a truck driver to enter and unload before telling Defendants about the dike   three hours after Plaintiff had left the plant.

60.     Upon information and belief, Defendants then took samples of the liquid and sent it to the lab for testing. It was determined that DMS had leaked into the dike. As a result, the fire alarm was pulled.

61.     Upon information and belief, not a drop of DMS was leaked onto the ground.

62.     Shortly thereafter, Defendants began an investigation to determine who was at fault for the DMS leak. This investigation lasted a couple of months.

63.     Plaintiff continued to be employed during the course of the investigation.

64.     Upon information and belief, a valve was left open during the maintenance shutdown and caused the leak. Mr. Ennis was not at the plant during the shutdown.

65.     Numerous employees had observed the same circumstances as Plaintiff, yet no other employee reported the liquid in the dike to Defendants   except for the Plaintiff and Mr. Griffith.

66.     Despite this, on September 26, 2019, Defendants terminated Plaintiff's employment, purportedly due to the DMS leak because he didn't pull the alarm, in violation of company policy. However, there was no evidence that Plaintiff was at fault for the leak and Plaintiff had alerted Mr. Knight and Mr. Ryan of the situation.

9

67.     Additionally, six days prior to their unlawful termination, Defendants changed its corrective actions policy.

68.     Moreover, Mr. Ennis had worked at the Belle site for twenty-six years and had been employed by Defendant for twelve years, and was never written up.

69.     Upon information and belief, no other employees were reprimanded or terminated as a result of Defendants' investigation.

70.     Plaintiff suffered termination of employment in retaliation for his prior reports of Defendants' repeated violations of well-established public policy. Plaintiff's belief that his termination was retaliatory is based, in part, on the outcomes of the other dike and co-employee Mr. Tyler's failure to shut off the valve as alleged previously.

71.     Plaintiff files this action to seek redress for his unlawful termination and enjoin Defendants from their reckless, wanton, willful, and malicious conduct.

## COUNT ONE
### Retaliatory Discharge in Violation of Public Policy

72.     Plaintiff incorporate the preceding paragraphs by reference.

73.     "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syl. Pt., *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 117, 246 S.E.2d 270, 271 (1978).

74.     Defendants violated substantial public policy by violating the DOT; CWA; WVWPCA; and OSHA safety regulations under CPSIA.

75.     Plaintiff made reports of violations of these public policies.

10

76.     Defendants discharged Plaintiff in retaliation for his attempts to enforce public policy of workplace safety and environmental protection.

77.     Defendants were thus motivated by its desire to contravene public policy.

**WHEREFORE**, Plaintiff seeks the following relief:

(a)     Actual damages;

(b)     Punitive damages;

(c)     Injunctive relief to enjoin continued unlawful employment practices;

(d)     Reasonable attorney fees and costs; and

(e)     All other relief which this Court deems equitable, just and proper.

### PLAINTIFF RESPECTFULLY REQUEST A TRIAL BY JURY.

**DONNIE ENNIS**
**Plaintiff, by and through Counsel,**

Laura Davidson (WVSB # 13852)
Jennifer S. Wagner (WVSB #10639)
Mountain State Justice
1029 University Avuenue
Suite 101
Morgantown, WV 26505
P: (304) 326-0188
F: (304) 326-0189
Laura@msjlaw.org

*Counsel for the Plaintiff*

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2021 JUN -1  AM 9: 35

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
         886-767-8683
**Visit us online:**
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

| | |
|---|---|
| **Control Number:** 275483 | **Agent:** C. T. Corporation System |
| **Defendant:** THE CHEMOURS COMPANY | **County:** Kanawha |
| 1627 QUARRIER ST. | **Civil Action:** 21-C-353 |
| CHARLESTON, WV 25311 US | **Certified Number:** 92148901125134100003127622 |
| | **Service Date:** 5/27/2021 |

I am enclosing:

   **1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your corporation as your attorney-in-fact.  Please address any questions about this
document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

DONNIE ENNIS,

     Plaintiff,

                       2021 JUN -1  AM 9:35

v.                            CATHY S. GATSON, CLERK
                         KANAWHA COUNTY CIRCUIT COURT
                         CIVIL ACTION NO.   21-C-353
                         JUDGE:  BLOOM

THE CHEMOURS COMPANY
THE CHEMOURS COMPANY FC, LLC,

                         **SERVE:**

                         **THE CHEMOURS COMPANY**

                         **CT CORPORATION SYSTEM**
                         **1627 Quarrier Street**
                         **Charleston, WV  25311-2124**

                    **SUMMONS**

To:  The Above-Named Defendant:

**IN THE NAME OF THE STATE OF WEST VIRGINIA,**

     You are hereby summoned and required to serve upon **Laura Davidson/Mountain State Justice, Inc., whose address is 1029 University Ave., Ste. 101, Morgantown, West Virginia, 26505,** an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

     You are required to serve your answer to the Complaint within **thirty (30)** days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

                                       **Cathy S. Gatson, Clerk**

                             Clerk of Court          By CPugh

Date: May 14 2021

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



FILED

2021 JUN -1  AM 9: 35

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:**  304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

| | | | |
|---|---|---|---|
| **Control Number:** 275484 | | **Agent:** C. T. Corporation System |
| **Defendant:** THE CHEMOURS COMPANY FC, LLC | | **County:** Kanawha |
| 1627 QUARRIER ST. | | **Civil Action:** 21-C-353 |
| CHARLESTON, WV 25311 US | | **Certified Number:** 92148901125134100003127639 |
| | | **Service Date:** 5/27/2021 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State



FILED
2021 JUN 9: 35

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DONNIE ENNIS,

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

    Plaintiffs,

v.

                                                      Civil Action No. 21-C-353
                                                            Bloom

THE CHEMOURS COMPANY FC, LLC,

    Defendant.

                         **SERVE: WEST VIRGINIA SECRETARY OF STATE**
                         **THE CHEMOURS COMPANY FC, LLC**
                         **CT CORPORATION SYSTEM**
                         **1627 QUARRIER ST.**
                         **CHARLESTON, WV 25311-2124**

                         **SUMMONS**

To: The Above-Named Defendant:

IN THE NAME OF THE STATE OF WEST VIRGINIA,

    You are hereby summoned and required to serve upon Laura Davidson /Mountain State Justice, Inc., whose address is 1029 University Ave, Ste. 101, Morgantown, WV 26505, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

    You are required to serve your answer to the Complaint within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Date: 4-28-2021                           **Cathy S. Gatson, Clerk**

                                         Clerk of Court  by gHughes

Civil Action Number                21-C-353

Package Identification Code        9214890112513410003127622

Signature Downloaded               6/7/2021 6:02:13 AM

Defendant Name                     THE CHEMOURS COMPANY



 **UNITED STATES POSTAL SERVICE**

Date Produced: 06/07/2021

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410
0003 1276 22. Our records indicate that this item was delivered on 06/01/2021 at 02:11 a.m. in
CHARLESTON, WV 25321. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance.
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        312762

Civil Action Number            21-C-353

Package Identification Code    92148901125134100003127639

Signature Downloaded           6/7/2021 6:02:13 AM

Defendant Name                 THE CHEMOURS COMPANY FC, LLC



Date Produced: 06/07/2021

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410
0003 1276 39. Our records indicate that this item was delivered on 06/01/2021 at 02:11 a.m. in
CHARLESTON, WV 25321. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:       312763

Search                                                        http://apps.sos.wv.gov/business/service-of-process/Home/Sear...



# West Virginia Secretary of State
## Mac Warner

(http://www.sos.wv.gov)

Home (http://www.sos.wv.gov/pages/default.aspx) | Business4WV (http://www.business4wv.com/b4wvpublic/) | News Center (/news/Pages/default.aspx) | (http://www.facebook.com/wvsos) (http://twitter.com /wvsosoffice) (http://www.sos.wv.gov/_layouts/feed.aspx?xsl=1&web=%2Fnews&page=26402023-f08d-441f-9bbd-5690559009d1&wp=d963eb34-2126-4d12-bf9a-8c46be406e7e)

Secretary of State (http://www.sos.wv.gov/Pages/default.aspx) > Business and Licensing (http://www.sos.wv.gov /business-licensing/Pages/default.aspx) > Service of process search (/business/service-of-process/) > Search results

| Civil action # | County | Defendant | Serviced |
|---|---|---|---|
| 21-C-353 | Kanawha | THE CHEMOURS COMPANY (/business/service-of-process/Home/Details/275483) | Thursday, May 27, 2021 |
| 21-C-353 | Kanawha | THE CHEMOURS COMPANY FC, LLC (/business /service-of-process/Home/Details/275484) | Thursday, May 27, 2021 |

Total: 2 results

Home (http://www.sos.wv.gov/pages/default.aspx) | Contact Us (http://www.sos.wv.gov/Pages/contact-us.aspx) | Site Map (http://www.sos.wv.gov/Pages/sitemap.aspx) | Disclaimer (http://www.sos.wv.gov/Pages/content-disclaimer.aspx)

   (http://www.wv.gov)

State Agency Directory (http://www.wv.gov/Pages/agencies.aspx) | Online Services (http://www.wv.gov/Pages /services.aspx)



EXHIBIT

B

State of Delaware
Secretary of State
Division of Corporations
Delivered  08:34 AM 10/30/2017
FILED  08:34 AM 10/30/2017
SR 20176834619 - File Number  5516785

## CERTIFICATE OF MERGER
### OF
### THE CHEMOURS COMPANY TT, LLC
(a Pennsylvania limited liability company)
### WITH AND INTO
### THE CHEMOURS COMPANY FC, LLC
(a Delaware limited liability company)

This Certificate of Merger of The Chemours Company TT, LLC with and into The Chemours Company FC, LLC is being filed in accordance with the provisions of 6 *Del. C.* §18-209, and the undersigned limited liability company does hereby certify as follows:

1.  The name, jurisdiction of formation and type of entity of each of the constituent entities which is to merge are as follows:

| Name | Jurisdiction of Formation | Type of Entity |
|---|---|---|
| The Chemours Company TT, LLC | Pennsylvania | limited liability company |
| The Chemours Company FC, LLC | Delaware | limited liability company |

2.  An Agreement and Plan of Merger has been approved and executed (the "Agreement of Merger") in accordance with 6 *Del. C.* § 18-209 by The Chemours Company TT, LLC and The Chemours Company FC, LLC.

3.  The name of the surviving Delaware limited liability company is The Chemours Company FC, LLC.

4.  The merger of The Chemours Company TT, LLC with and into The Chemours Company FC, LLC, and this certificate of merger, shall not become effective until November 1, 2017.

5.  The Agreement of Merger is on file at the place of business of the surviving limited liability company located at 1007 Market Street, Wilmington, Delaware 19899.

6.  A copy of the Agreement of Merger will be furnished by the surviving limited liability company, on request and without cost, to any member of The Chemours Company FC, LLC or any person holding an interest in The Chemours Company TT, LLC.

*[Signature page follows.]*



EXHIBIT

*C*

tabbies

IN WITNESS WHEREOF, this Certificate of Merger has been executed by the undersigned authorized person in accordance with 6 *Del. C.* § 18-204.

**THE CHEMOURS COMPANY FC, LLC**

By: _____

Name:  Brian Morrissey
Title:  Authorized Person

[Signature Page to Certificate of Merger]

5160827v.3

# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"THE CHEMOURS COMPANY TT, LLC", A PENNSYLVANIA LIMITED
LIABILITY COMPANY,

WITH AND INTO "THE CHEMOURS COMPANY FC, LLC" UNDER THE NAME
OF "THE CHEMOURS COMPANY FC, LLC", A LIMITED LIABILITY COMPANY
ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE,
AS RECEIVED AND FILED IN THIS OFFICE ON THE THIRTIETH DAY OF
OCTOBER, A.D. 2017, AT 8:34 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF
NOVEMBER, A.D. 2017.

Jeffrey W. Bullock, Secretary of State

5516785  8100M
SR# 20176834619

Authentication: 203483597
Date: 10-30-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DONNIE ENNIS,

       Plaintiff,

v.                                  Civil Action No. 21-C-353

THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC,
AND THE CHEMOURS COMPANY TT, LLC,

       Defendants.

### NOTICE OF REMOVAL TO FEDERAL COURT

       Notice is hereby given that the above-styled action has been removed to the United States District Court for the Southern District of West Virginia, pursuant to 28 U.S.C. § 1332, 1441 and 1446, et seq. Pursuant to 28 U.S.C. § 1446, a copy of the Notice of Removal, with exhibits, is attached hereto as Exhibit A.

                         THE CHEMOURS COMPANY,
                         THE CHEMOURS COMPANY FC, LLC, AND
                         THE CHEMOURS COMPANY TT, LLC

                         By: Spilman Thomas & Battle, PLLC

                         *Ellen J. Vance*

                         Eric W. Iskra (WV State Bar # 6611)
                         Ellen J. Vance (WV State Bar # 8866)
                         300 Kanawha Boulevard, East (Zip 25301)
                         P.O. Box 273
                         Charleston, West Virginia  25321-0273
                         304-340-3800
                         304-340-3801 (fax)
                         eiskra@spilmanlaw.com
                         evance@spilmanlaw.com



EXHIBIT

D

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

DONNIE ENNIS,

      Plaintiff,

v.                                       Civil Action No. 21-C-353

THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC,
AND THE CHEMOURS COMPANY TT, LLC,

      Defendants.

## CERTIFICATE OF SERVICE

      I, Ellen J. Vance, do hereby certify that I have served the foregoing "Notice of Removal to Federal Court" upon the following counsel of record by depositing the same in the United States mail, postage prepaid on this 25th day of June, 2021, addressed as follows:

                Laura Davidson, Esquire
                Jennifer S. Wagner, Esquire
                Mountain State Justice
                1029 University Avenue, Suite 101
                Morgantown, West Virginia  26505

                _Ellen J. Vance_
                Ellen J. Vance (WV State Bar # 8866)